IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERIC L. MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19-cv-02262 |
| ) | |
| DEF JAM RECORDINGS, ISLAND ) | |
| RECORDS, THE ISLAND DEF JAM ) | **JURY DEMAND** |
| MUSIC GROUP, ROCK THE ) | |
| WORLD, LLC, UNIVERSAL MUSIC ) | |
| GROUP, INC., UMG RECORDINGS, INC.,) | |
| and UNIVERSAL MUSIC ) | |
| INVESTMENTS, INC., ) | |
| ) | |
| ) | |
| Defendants. ) | |

**FIRST AMENDED COMPLAINT**

NOW COMES Plaintiff, ERIC L. MILLER (hereinafter "Plaintiff" or "Miller"), by and through his attorneys, Blaise & Nitschke, P.C., and hereby complains against Defendants Def Jam Recordings, Island Records, The Island Def Jam Music Group, Rock The World, LLC, Universal Music Group, Inc., UMG Recordings, Inc., and Universal Music Investments, Inc. (hereinafter collectively referred to as "Defendants"). In furtherance whereof, Plaintiff states as follows:

**NATURE OF THE ACTION**

1. In 2005, Kanye West ("West") filed suit against Plaintiff and Plaintiff filed counter-claims against West in the case entitled *Kanye West v. Eric "E-Smoove" Miller and Focus Music Group, Inc.*, case no. 1:05-cv-04977 in the United States District Court for the Northern District of Illinois (the "Action").

1

2. In May of 2008, as a result of the Action, the parties to the Action, along with Defendants The Island Def Jam Music Group and Rock The World, LLC, entered into a settlement agreement designed to resolve all disputes relating to ownership and release of Kayne West's first unreleased master recordings embodying musical compositions (hereinafter collectively the "Works").

3. Under the terms of the 2008 Settlement Agreement (the "Settlement Agreement") Plaintiff Eric Miller and Kanye West agreed for Plaintiff to transfer of ownership of the Works to [legal names] and [legal names] agreed to commercially release the Works which had not been previously released by Kanye West prior to West signing as a recording artist to Roc-A-Fella Records. As a material term and in consideration of the transfer of ownership of the Works in the Settlement Agreement, The Island Def Jam Music Group promised to commercially release the Works before December 31st, 2008. *See* Settlement Agreement attached hereto and marked as Exhibit A.

4. During the course of the litigation of the Action and before execution of the Settlement Agreement, several depositions were conducted, including Plaintiff's. During Plaintiff's deposition, Plaintiff testified that Plaintiff did not create the beats and/or select and place the samples contained and embodied in the Works.

5. The Island Def Jam Music Group did not release the Works then and still have not released the Works to date.

6. The Island Def Jam Music Group participated in a twenty-one-day verification process in which it examined the masters for technical and commercial viability as a condition of and prior to executing and funding the Settlement Agreement. Island Def Jam Music Group

entered into the Settlement Agreement and received ownership and possession of the masters as consideration for entering into the Settlement Agreement.

7. The Island Def Jam Music Group, as a provision of the Settlement Agreement, agreed if it did not find the masters commercially and technically satisfactory, The Island Def Jam Music Group would return the Works to Miller.

8. The Island Def Jam Music Group did not return the Works.

9. The Island Def Jam Music Group materially misrepresented its intentions to release the Works and only used the settlement agreement and initial nominal payment to Miller and West to gain control of the Works, and to relieve Mr. Miller of his rights and interest in the Works.

10. Furthermore, The Island Def Jam Music Group's failure to commercially release the Works undermined Mr. Miller's financial interests in the Works and prevented Mr. Miller from realizing the Works' full earning potential while The Island Def Jam Music Group and its affiliates enjoyed and continue to enjoy commercial and financial success with other Kanye West releases to which the worldwide revenues tally well over one hundred million dollars.

11. Once The Island Def Jam Music Group gained ownership and control of the Works through the Settlement Agreement, The Island Def Jam Music Group feigned hinderance in clearing samples contained in the Works, although it knew prior to executing the Settlement Agreement that the Works contained samples and, nevertheless, made no real effort to obtain the relevant sample clearances.

12. This lawsuit seeks to right the wrongs perpetrated by the Island Def Jam Music Group, then under the umbrella of UMG Recordings, Inc., for its blatant effort to bully the small independent producer, and it's behemoth "by any means necessary" approach to gaining all

ownership, right and interest in the Masters previously owned and possessed by Plaintiff. Mr. Miller trusted and relied upon Island Def Jam to properly commercially release and exploit the Masters to the best of its ability and consistent with how it has released other Kanye West works. Island Def Jam Music Group's misconduct and breach of fiduciary duty as the majority revenue shareholder in the commercial release of the Works is clear. This lawsuit seeks civil penalties and all appropriate compensatory and punitive relief to address, remedy and discourage future misconduct from all Defendants, related agents and subsidiaries.

## Parties

13. Plaintiff, Eric L. Miller, is a resident of Illinois and two-time Grammy nominated music producer who discovered a young Kanye West and in 1995 recorded West's first artist album with intention to release on Miller's label Focus Music Group. Eric Miller is party to the Settlement Agreement.

14. Defendant, UMG Recordings, Inc. is a Delaware corporation globally headquartered in Santa Monica, California.

15. Defendants Island Records and Def Jam Recordings are New York located music labels and affiliate labels of UMG Recordings, Inc. (formerly "Island Def Jam Music Group" prior to disbandment and division into the two labels in 2014). Defendant UMG Recordings, Inc. is currently home to additional major labels such as "Interscope", "Capitol", and "Republic".

16. UMG Recordings admits that they are the successor in interest and/or are otherwise legally responsible for the contract by and between Plaintiff Eric L. Miller and affiliate parties The Island Def Jam Music Group and Rock The World, LLC (the related parties entered into the Settlement Agreement with Plaintiff on or about May 22, 2008).

17. Defendant Rock The World, LLC was at all times relevant herein the distributing label for Kanye West and a party to the Settlement Agreement. Rock The World, LLC, in conjunction with Defendant The Island Def Jam Music Group, received transfer of ownership of the Works from Miller through the Settlement Agreement at the time of the execution.

18. Defendant Universal Music Group, Inc. is a Delaware corporation with its registered agent in New York. Universal Music Group, Inc. is the current registered foreign business corporation and counterpart of UMG Recordings, Inc.

19. Defendant Universal Music Investments, Inc. is a California corporation with its registered agent in New York. Universal Music Investments, Inc., along with Universal Music Group, Inc. and UMG Recordings, Inc. is a subsidiary of Vivendi Universal. Universal Music Investments, Inc. offers music production consulting.

20. All of the above parties are germane to this litigation as paragraph 11 of the Settlement Agreement states "This agreement shall be binding upon the parties, their representatives, shareholders, members, principals, affiliates, agents, parent corporations, subsidiaries, officers, directors, executors, administrators, successors, and assigns."

## Jurisdiction and Venue

21. Pursuant to the Illinois Constitution art. VI, 9, this Court has subject matter jurisdiction over Plaintiff's claims.

22. This Court has jurisdiction as agreed to by Plaintiff and Defendant in the settlement agreement which states, "[t]he rights and obligations of the Parties hereunder shall be construed and enforced in accordance with, and shall be governed by, the laws of the state of Illinois, without regard to the principles of conflict of laws." *See* Exhibit A.

23. This Court has jurisdiction over Defendants pursuant to 735 ILCS 5/2-209 because they conduct substantial business transactions in Illinois.

24. Venue is proper in Cook County and the Northern District of Illinois because Defendants conduct business transactions in Cook County and the causes of action arose, in part, in Cook County.

**Common Factual Allegations**

25. On or about July 18th, 2008, The Island Def Jam Music Group ("IDJ"), a record label affiliated with and a division of UMG Recordings, Inc., executed the Settlement Agreement between the Plaintiff Eric L. Miller, Kanye West, Rock The World, LLC and itself in regards to "The Unreleased Masters", featuring performances by Kanye West in (the "Works" (I) "25 to Life", (2) Ho!!!, (3) Keep MC's Looking Out", (4) "My People's Get Down", (5) "Real Nigga Live", (6) "Stop Frontin", (7) "There Are None", (8) Are We Going Far?", (9) "Southside", and (10) "Set The World On Fire". The Settlement Agreement included all compilations of those recordings.

26. The Agreement was the result of a civil suit before the Federal Court in the Northern District of Illinois, being heard by the Honorable Judge Anderson. The Agreement was prepared under the oversight Steve Gawley ("Gawley"), Executive Vice President of Business & Legal Affairs for East Coast Labels, the division of Universal Music Group that includes The Island Def Jam Music Group.

27. Prior to the existence of the Agreement, West arranged a meeting with Def Jam Recordings President Jay Z, with Eric Miller in attendance, to which the commercial viability of the Works were discussed and it was decided that they had commercial promise and value. Jay Z was noted to say West's pre-fame recordings could sell hope.

28. In consideration for the Settlement Agreement, Miller relinquished sole possession of the Works to IDJ and assigned to IDJ all right, title and interest in the Works to IDJ.

29. Also as a condition to the Settlement Agreement, Miller allowed IDJ possession of the Works for an agreed 21-day "Verification Process" period in which IDJ and its employees or agents would inspect the masters "in order to verify that their contents are as represented and that the Masters and accompanying parts are technically satisfactory for commercial distribution". The Settlement Agreement also states, "If the contents of the Masters are not as represented and/or the accompanying parts are not technically satisfactory for commercial distribution, IDJ shall so notify Miller and this Agreement shall be null and void. IDJ shall immediately return the Masters to Miller and the parties shall retain all of the rights they had prior to this Agreement." *See* Exhibit A at ¶¶ 3(a) and 3(c).

30. IDJ completed the Verification Process and executed the Agreement with Miller, West and Rock The World, LLC, including payment to Miller and West as outlined in the Agreement, an indication of its acceptance and approval of the Works.

31. The Agreement outlined that IDJ would commercially release the Works "no later than December 31st, 2008." The Agreement also outlined a share of net profits from the commercial release of the masters as follows "IDJ shall pay to RTW (on behalf of West) thirty percent (30%) and shall prospectively accrue to Miller's account twenty (20%) of IDJ's Net Profits (defined below) from all revenue derived from the Masters". *See* Exhibit A at ¶¶ 4 and 4(d).

32. The Island Def Jam Music Group did not release the Works as agreed.

33. In addition, Defendants' failure to release the Works with proper credit granted to Plaintiff caused Plaintiff reputational damages and diminished revenue that he would have otherwise enjoyed if he had been affiliated with Kanye West's first album.

34. On or about October of 2008, an IDJ representative contacted Miller via e-mail on West's behalf to request delaying the release of the Works until 2nd quarter of 2009, citing that "West did not want the Masters overshadowed by his "808s and Heartbreak" album" which was also due for release in 2008. Miller agreed to the 2nd quarter 2009 release via e mail.

35. In or about early 2009, at IDJ's request, Miller assisted IDJ with identifying possible third-party music samples within the Works, for the purpose of clearing them prior to release. In or about the end of 2009, Miller's attorneys confronted IDJ about continued delayed release of the Masters. IDJ indicated at that time that the Works would not be released citing unknown musical samples.

36. Importantly, paragraph 1 of the Settlement Agreement states, "Miller represents and warrants that: (a) neither he nor any other person or entity, including but not limited to [Steve] Hulme, has any other copies of the Masters in their possession, custody, or control; (b) neither he nor Hulme has any other recordings, masters or otherwise, made by or of West; and (c) no "Materials" embodied in the Masters will violate or infringe upon the rights of any person or entity. As used herein, "Materials" means (i) all musical compositions and (ii) all other musical and/or artistic materials, ideas, and/or other intellectual properties created, furnished or selected by *Miller* and contained in or used in connection with the Masters." *See* Exhibit A, *emphasis added*.

## COUNT I
## BREACH OF CONTRACT AGAINST ALL DEFENDANTS

37. Plaintiff re-alleges and incorporates Paragraphs 1 through 36 as if fully set forth herein.

38. The required elements of a breach of contract claim in Illinois are the standard ones of common law: "(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages.*" Ass'n Ben. Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007), quoting *MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, LLC*, 364 Ill. App. 3d 6, 845 N.E.2d 22, 30, 300 Ill. Dec. 601 (Ill. App. 2006).

39. On or about July 18th, 2008 Defendant IDJ, a division of UMG Recordings, Inc., executed a Settlement Agreement between Plaintiff Miller, West, Rock The World, LLC and itself in regards to "The Unreleased Masters".

40. As of July 18, 2008, the parties were bound by the terms of the Settlement Agreement. Offer, acceptance, and consideration are established as all parties were of sound mind and willfully agreed to their contractual obligations. Plaintiff performed according to the terms of Plaintiff's obligations.

41. The Settlement Agreement stipulated as a condition of settlement that Island Def Jam Music Group would commercially release the Works by December 31, 2008. On or about November 2008, a representative from Island Def Jam Music Group requested via e-mail to extend the release date until 2nd quarter of 2009 and Plaintiff agreed to grant such extension.

42. Island Def Jam Music Group breached the Settlement Agreement by failing to release the Works by the date outlined in the Settlement Agreement.

43. Island Def Jam Music Group breached the Settlement Agreement by failing to release the Works by the general 2009 extension date.

44. Island Def Jam Music Group's failure to release the Works commercially and use it's best efforts to market and promote them caused Mr. Miller to suffer actual damages including, but not limited to, severe economic harm due to loss of ownership of unique intellectual property, lost profits during the optimum time of release based on Kanye West's existing sales history at the time and star power, loss of life time earning potential due to the unique nature of the intellectual property, loss of long term future income, and the interest that would have accrued had Miller sold or otherwise monetized the Works rather than entering into the Settlement Agreement.

WHEREFORE Eric Miller seeks recovery of actual and compensatory damages arising from Island Def Jam's breach of the 2008 Agreement and its Amendments; attorneys' fees, expenses and costs; pre and post judgment interest and such other and further relief as this Court may deem just and proper or to which he may be entitled as a matter of law.

## COUNT II
## BREACH OF FIDUCIARY DUTY AGAINST ALL DEFENDANTS

45. The allegations in Paragraphs 1 through 44 above are incorporated by reference as if fully restated herein.

46. Defendants owe to Plaintiff the duty to exercise candor, good faith, proper accounting and best business practices in the management and administration of the Works and affairs, particularly with respect to commercial release and ongoing commercial viability, and continued exploitation.

47. Plaintiff Eric Miller relied on and trusted Island Def Jam Music Group's representation that it would commercially release the Works as agreed in the Settlement Agreement. IDJ agreed to pay Plaintiff 20% of net revenues in relation to the commercial release of the Masters in perpetuity. IDJ agreed to account to Plaintiff semi-annually through its

accounting department using GAAP principles to calculate money accrued to Eric Miller's account.

48. IDJ failed to commercially release the Works. IDJ failed to return the Works and all rights and interests back to Mr. Miller.

49. All Defendants and their agents or representatives had actual and/ or constructive knowledge of the acts described herein, and ratified, approved, joined in, acquiesced in, and/or authorized the improper acquisition of the Masters and/ or the breaching, and/ or retained the benefits of said breaching acts of failure to commercially release the Works.

50. IDJ's executives of business affairs, its representatives and agents failed to commercially release the Works by December 31st, 2008, or to the extension requested and granted through 2009.

51. Defendants' conduct set forth herein was breach of the fiduciary duties they owed to Plaintiff, as alleged herein. Defendants intentionally, recklessly, or negligently breached or disregarded their fiduciary duties to protect the rights and interests of Eric Miller, as a party entitled to a revenue share.

52. As a direct and proximate result of Defendants' breaches of fiduciary duty by way of failure to release the Works commercially as stipulated, and failure use it's best efforts to market and promote them caused Mr. Miller to suffer actual damages including, but not limited to, severe economic harm due to loss of ownership of unique intellectual property, lost profits during the optimum time of release based on Kanye West's existing sales history at the time and star power, loss of life time earning potential due to the unique nature of the intellectual property, loss of long term future income, and the interest that would have accrued had Miller sold or otherwise monetized the Works rather than entering into the Settlement Agreement.

WHEREFORE Plaintiff, Eric L. Miller, seeks recovery of actual, compensatory and punitive damages arising from Island Def Jam's breach of the 2008 Agreement and its Amendments; attorneys' fees, expenses and costs; pre and post judgment interest and such other and further relief as this Court may deem just and proper or to which he may be entitled as a matter of law.

## COUNT III
### EQUITABLE ESTOPPEL AGAINST ALL DEFENDANTS *AS AN ADDITIONAL AND ALTERNATIVE CLAIM*

53. Plaintiff re-alleges and incorporates Paragraphs 1 through 52 as if fully set forth herein.

54. Defendants knew that they had impermissibly failed to release the Works consistent with the terms of the Settlement Agreement, as delineated above.

55. As a condition to the agreement, Miller allowed IDJ possession of the Works for an agreed 21-day "Verification Process" period in which IDJ and its employees or agents would inspect the Masters "in order to verify that their contents are as represented and that the Masters and accompanying parts are technically satisfactory for commercial distribution". The Settlement Agreement also states, "If the contents of the Masters are not as represented and/or the accompanying parts are not technically satisfactory for commercial distribution, IDJ shall so notify Miller and this Agreement shall be null and void. IDJ shall immediately return the Masters to Miller and the parties shall retain all of the rights they had prior to this Agreement." *See* Exhibit A at ¶¶ 3(a) and 3(c).

56. As a result of the depositions taken in the Action, Defendants were aware that Plaintiff was not responsible for selecting and/or placement of any samples contained in the Works.

12

57. As a result of Defendants' knowledge that Plaintiff was not responsible for selecting and/or placement of any samples contained in the Works, the representations and warranty portion of the Settlement Agreement was specifically and narrowly tailored to only apply to any materials being provided by Plaintiff. Indeed, "Materials" as set forth in Settlement Agreement was defined as follows: "(i) all musical compositions and (ii) all other musical and/or artistic materials, ideas, and/or other intellectual properties created, furnished or selected by *Miller* and contained in or used in connection with the Masters." *See* Exhibit A at paragraph 1, *emphasis added*.

58. Any attempt by Defendants to be shielded from liability for the failure to commercially release the Works based upon any feigned inability to clear samples that were not provided by Plaintiff should not be permitted under the doctrine of equitable estoppel.

WHEREFORE, as a result of the foregoing, Defendants should be equitably estopped from arguing that Plaintiff breached the Settlement Agreement and/or failed to comply with any representation and/or warranty as it relates to third party samples.

## COUNT IV
## UNJUST ENRICHMENT AGAINST ALL DEFENDANTS, *PLEAD IN THE ALTERNATIVE*

59. Plaintiff re-alleges and incorporates Paragraphs 1 through 58 as if fully set forth herein.

60. A benefit was conferred upon Defendants by the Plaintiff upon execution of the Settlement Agreement, as Plaintiff relinquished all copies of the Works to Defendant IDJ.

61. Plaintiff was promised 20% of net revenues in relation to the commercial release of the Works.

62. As a result of IDJ's Business Affairs executives and its representatives and agents failure to commercially release the Works by December 31st, 2008, or to the extension requested and granted through 2009, a benefit was conferred upon Defendants by the Plaintiff.

63. Defendants failed and continue to fail to compensate Plaintiff for 20% of net revenues in relation to the promised commercial release of the Masters in perpetuity.

64. Defendants are aware of the retained benefit of all copies of the Works and all revenue in relation to the Works.

65. All Defendants and their agents or representatives had actual and/ or constructive knowledge of the acts described herein, and ratified, approved, joined in, acquiesced in, and/or authorized the improper acquisition of the Masters and/ or the breaching, and/ or retained the benefits of said breaching acts of failure to commercially release the Works.

66. The circumstances would be inequitable for Defendants to continue to retain the benefit of possessing the Works without paying the agreed-upon value thereof to Plaintiff.

WHEREFORE Plaintiff, Eric L. Miller, seeks recovery of compensatory and punitive damages arising from Island Def Jam's breach of the 2008 Agreement and its Amendments; attorneys' fees, expenses and costs; pre and post judgment interest and such other and further relief as this Court may deem just and proper or to which he may be entitled as a matter of law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Eric Miller, by and through his attorneys Blaise & Nitschke, P.C., respectfully requests this Honorable Court enter judgment against the Defendant as follows:

1. That Eric Miller be awarded general compensatory damages in an amount to be determined at trial;

2. That Eric Miller be awarded punitive damages in an amount to be determined at trial;

3. That Eric Miller be awarded their attorney's fees and costs in this action, pre and post judgment interest; and

4. That Eric Miller be awarded any such other and all relief to which may be entitled as a matter of law and as deemed appropriate by this Court.

**JURY DEMAND**

Plaintiff demands trial by jury on all claims so triable.

Respectfully Submitted,
ERIC L. MILLER

Blaise &Nitschke, P.C.
123 N. Wacker Drive, Suite 250
Chicago, Illinois 60606
T: (312) 448- 6602
F: (312) 803-1940
hblaise@blaisenitschkelaw.com
ARDC No. 6298241

By: */s/ Heather L. Blaise*
One of Plaintiff's attorneys

## **CERTIFICATE OF SERVICE**

      The undersigned, an attorney, being first duly sworn deposes and states that the above and attached were served to all parties of record via the CM/ECF electronic filing system on this 14th day of August, 2019.

                                                                        */s/ Heather L. Blaise*
                                                                        Heather L. Blaise, Esq.

Blaise &Nitschke, P.C.
123 N. Wacker Drive, Suite 250
Chicago, Illinois 60606
T: (312) 448- 6602
F: (312) 803-1940
hblaise@blaisenitschkelaw.com
ARDC No. 6298241