**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ERIC L. MILLER,<br>      Plaintiff,<br><br>      v.<br><br>UMG RECORDINGS, INC., a Delaware corporation,<br><br>      Defendant. | Case No. 19-cv-02262<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION & ORDER

In 2008, Plaintiff Eric Miller signed an agreement with Defendant UMG Recordings, Inc. wherein he promised to deliver Kanye West's early, unreleased master recordings. In return, Defendant agreed to commercially release the recordings. It declined to do so, however, because it found that the master recordings contained samples that neither Defendant nor Plaintiff owned. Plaintiff now sues for breach of contract, breach of fiduciary duty, unjust enrichment, and equitable estoppel and also seeks punitive damages and attorneys' fees. Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, this Court dismisses with prejudice Plaintiff's claims except for Plaintiff's breach of contract claim, which may proceed.

1

## BACKGROUND

Plaintiff, a music producer, discovered Kanye West in 1995 and recorded West's first artist album, but it was never released. [35] ¶ 13. Defendant is a music corporation. *Id.* ¶¶ 14–16.

In 2005, Kanye West sued Plaintiff regarding these unreleased masters. [35] ¶ 1. As a result, Kanye West, Plaintiff, and Defendant entered into a settlement agreement (the Settlement Agreement), *id.* ¶ 2; [35] (Ex. 1), pursuant to which Plaintiff promised to deliver West's unreleased master recordings (the Works) and transfer all ownership rights to Defendant. [35] (Ex. 1, cl. 1). Plaintiff also represented and warranted that no materials within the Works violated or infringed upon the rights of any other person. *Id.*

For its part, upon receiving the Works, Defendant had 21 days to review them and determine if they were satisfactory for commercial distribution. *Id.* at cl. 3. If Defendant determined the Works were suitable for release, the Settlement Agreement obligated it to commercially release the Works by December 31, 2008 and pay Plaintiff a percentage of the net profits. *Id.* at cl. 4(d). Initially, all appeared to be proceeding as planned: Defendant completed the verification process, paid Plaintiff, and remained silent as to any problems with the Works. [35] ¶ 30.

Defendant, however, did not release the Works by December 31, 2008. *Id.* ¶ 32. Instead, in the fall of 2008, Defendant, on behalf of West, asked to delay release "until 2nd quarter of 2009," *id.* ¶ 34, so that the Works would not be overshadowed by West's album "808s and Heartbreak," scheduled to be released shortly. *Id.* Plaintiff

agreed. *Id*. But 2009 came and went, and Defendant still failed to release the Works. *Id*. ¶ 35. When Plaintiff asked for an explanation, Defendant responded that the Works contained possible third-party music samples that neither Defendant nor Plaintiff owned. *Id*. For that reason, Defendant could not and would not release the Works. *Id*. Nine years later, Plaintiff filed this lawsuit. [1] (Ex. 1).

**LEGAL STANDARD**

Defendant seeks to dismiss the First Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). On a motion to dismiss, this Court must construe the First Amended Complaint in the light most favorable to Plaintiff, accept as true all well-pleaded facts, and draw all reasonable inferences in his favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010). Statements of law, however, need not be accepted as true. *Yeftich*, 722 F.3d at 915.

This Court is also limited to considering only the "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

To survive, the First Amended Complaint must "state a claim to relief that is plausible on its face." *Yeftich*, 722 F.3d at 915. For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the factual allegations required to state a plausible

claim for relief depends upon the complexity of the case, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *Limestone Dev. Corp. v. Vill. Of Lemont*, 520 F.3d 797, 803–04 (7th Cir. 2008).

**ANALYSIS**

I. <u>Breach of Contract</u>

Defendant seeks dismissal of Plaintiff's breach of contract claim, arguing that Plaintiff failed to perform his precedent obligations under the contract, thereby excusing Defendant from any subsequent performance. [43] at 12–14; *see also Hardin, Rodriquez & Boivin Anesthesiologists, Ltd. v. Paradigm Ins. Co.*, 962 F.2d 628, 633 (7th Cir. 1992) ("Under Illinois law, a condition precedent is some act that must be performed. . . before a contract becomes effective or before one party to an existing contract is obligated to perform. The failure to perform a condition precedent may be construed as a breach of contract.") (internal citations omitted). But to support this argument, Defendant points to Plaintiff's contractual warranties. *Id*.

Plaintiff represented and warranted that "no 'Materials' embodied in the Masters will violate or infringe upon the rights of any person or entity," [35] (Ex. 1, cl. 1). Defendant contends that, upon delivery, the Works were not as promised and instead contained samples. [43] at 12–14. Defendant argues this breach amounted to nonperformance and excused its obligation to release the Works. [43] at 12. Even though Plaintiff's complaint suggests the Works were not as he warranted, *see* [35] ¶¶ 4, 11, 35, 57, Defendant confuses two contractual concepts: warranties and performance. While courts recognize that the failure to perform excuses another

4

party's performance, *Hardin*, 962 F.2d at 633; *Costello v. Grundon*, 651 F.3d 614, 640 (7th Cir. 2011) (applying Illinois law), a breach of warranty does not necessarily excuse the other party's performance. Thus, if Plaintiff failed to provide the Works as warranted, Defendant is entitled to seek the difference between the value of the Works as accepted and the value of the Works as promised, *Custom Automated Mach. v. Penda Corp.*, 537 F. Supp. 77, 84 (N.D. Ill. 1982); but Plaintiff's breach of his warranties would not necessarily excuse Defendant from its performance under the Settlement Agreement.

A different portion of the Settlement Agreement, however, did compel Plaintiff's performance. The Settlement Agreement obligated Plaintiff to "deliver the Masters and all recordings of the Masters *and any other sound recordings (or portions thereof) embodied therein*, including, but not limited to sampled recordings and any such recordings which may be in his possession or in the possession of Steve Hulme ('Hulme") or any other person or entity." [35] (Ex. 1, cl. 1) (emphasis added). Based upon the allegations in Plaintiff's own complaint, it appears Plaintiff failed to perform this task. *See, e.g.,* [35] ¶ 56 (acknowledging the Works contained unidentified samples). If Plaintiff failed to deliver all any sound recordings embodied within the Work, that substantially hinders his breach of contract claim. *Levin v. Grecian*, 974 F. Supp. 2d 1114, 1122 (N.D. Ill. 2013) (noting that under Illinois law, a party cannot sue for breach of contract when he has not substantially performed under the contract).

5

If Plaintiff's failure to deliver the Works and any sound recordings contained therein constitutes a material breach, then this fact may excuse Defendant's performance. *Costello*, 651 F.3d at 640. Nevertheless, at this early juncture, this Court cannot resolve such a factual matter. *Boyce v. Martella*, Case No. 13 C 6526, 2014 WL 4947681, at *3 (N.D. Ill. Oct. 1, 2014) ("At the motion to dismiss stage, the Court cannot resolve factual disputes."). For this reason, Defendant's motion to dismiss Plaintiff's breach of contract claim is denied.

II. Breach of Fiduciary Duty

Plaintiff next asserts a claim for breach of fiduciary duty. [35] ¶¶ 45–52. He claims Defendant owed him the "duty to exercise candor, good faith, proper accounting and best business practices in the management and administration of the Works and affairs, particularly with respect to commercial release and ongoing commercial viability, and continued exploitation." *Id.* ¶ 46. Plaintiff argues that Defendant breached this fiduciary duty by not releasing the Works. *Id.* ¶ 50. Defendant counters that this claim is time-barred and duplicative of Plaintiff's breach of contract claim. [43] at 6–7, 10.

Defendant correctly concludes that Plaintiff's claim is untimely. Plaintiff contends that his breach of fiduciary duty claim is based upon "express contract terms" and thus falls under the ten-year statute of limitations for contract claims. [50] at 3. Yet despite Plaintiff's characterization, Plaintiff fails to allege any express provision in the Settlement Agreement creating a fiduciary duty between the parties. At best, the Settlement Agreement created an implied fiduciary duty.

But even if an implied fiduciary duty existed, the statute of limitations for an implied fiduciary duty is five-years, not ten. *Armstrong v. Guigler*, 673 N.E.2d 290, 296 (Ill. 1996); *Keeler Props., Inc. v. BMO Harris Bank N.A.*, 2018 IL App (1st) 170355-U, ¶ 27 (Ill. App. Ct. 2018) (citing 735 ILL. COMP. STAT. 5/13-205). Plaintiff's five-year clock started to run when he "knew or reasonably should have known of the injury and that it was wrongfully caused." *Fuller Family Holdings, LLC v. N. Trust Co.*, 863 N.E.2d 743, 756 (Ill. App. Ct. 2007). Certainly, by at least January 1, 2010, Plaintiff realized that Defendant was not abiding by its promise to release the works by the "2nd quarter 2009." *Fuller Family*, 863 N.E. at 757 (noting the issue of when a plaintiff should have known of the cause of action "may be determined as a matter of law when the answer is clear from the pleadings."). But Plaintiff filed this action on December 31, 2018, well over five years since January 1, 2010. [1] (Ex. 1).

Plaintiff also points to the continuing violations doctrine to keep his claim alive. [50] at 9. The continuing violation doctrine delays a claim's accrual date when the claim arises from "a continued repeated injury" until the date of the last injury. *Kovacs v. U.S.*, 614 F.3d 666, 676 (7th Cir. 2010) (quoting *Limestone*, 520 F.3d at 801). He argues that because the Settlement Agreement required Defendant to pay a percentage of profits in perpetuity, his harm is ongoing. *Id.* But under Illinois law, the doctrine applies only to continuous tortious conduct, as opposed to violations of contractual or fiduciary duties. *Dvorak v. Granite Creek GP Flexcap I, LLC*, No. 16 c 9996, 2018 WL 1468998, at *2 (N.D. Ill. March 26, 2018) (citing sources). As

Plaintiff's claim is not based upon tortious conduct, his claim cannot be saved by the continuing violation doctrine. His fiduciary duty claim is, thus, time-barred.

Moreover, even if Plaintiff's fiduciary duty claim was timely, it must nevertheless be dismissed as duplicative of his breach of contract claim. Plaintiff bases his claim upon the Settlement Agreement, but fiduciary duties are created through the relationship between the parties, "not from documents." *Miller v. Harris*, 985 N.E.2d 671, 678 (Ill. App. Ct. 2013) ("A claim for breach of fiduciary duty is not 'founded on' a contract, even if the parties' relationship that gives rise to the fiduciary duty is based on a contract."). Apart from their contractual relationship, Plaintiff pled no facts establishing a special relationship between the parties sufficient to create a fiduciary duty. *Oil Express Nat'l, Inc. v. Latos*, 966 F. Supp. 650, 651–52 (N.D. Ill. 1997) (rejecting the plaintiff's argument that the contract between the parties created a fiduciary duty). Instead, the facts alleged show that the parties engaged in a routine, arms-length transaction and that Plaintiff's claims rest on the "mere trust" he placed in Defendant to fulfill its contractual duties. *Id.*; [35] ¶ 47. Even in the light most favorable to the Plaintiff, these facts fail to show a fiduciary relationship between the parties.

In sum, because Plaintiff's breach of fiduciary duty claim remains based upon the same underlying facts and harm as his breach of contract claim, the claim is duplicative. *DeGeer v. Gillis*, 707 F. Supp. 2d 784, 796 (N.D. Ill. 2010) ("It is well-settled that duplicative counts in a complaint may be properly dismissed."). This Court also finds that Plaintiff fails to properly state a claim for breach of fiduciary

duty. Accordingly, this Court grants with prejudice Defendant's motion to dismiss Plaintiff's breach of fiduciary duty claim.

III. Unjust Enrichment

This Court next turns to Plaintiff's unjust enrichment claim. [35] ¶¶ 59–66. As an initial matter, this claim is also untimely. The statute of limitations for unjust enrichment is five years. *CitiMortgage, Inc. v. Parille*, 49 N.E. 3d 869, 883 (Ill. App. Ct. 2016) (citing 735 ILL. COMP. STAT. 5/13–205). As explained previously, Plaintiff must have known by at least January 1, 2010 that Defendant failed to release the Works by the "2nd quarter 2009." Thus, because Plaintiff waited until December 31, 2018 to bring this claim, it is time-barred and must be dismissed.

Beyond being untimely, Plaintiff also fails to properly assert this claim in the alternative. In Illinois, plaintiffs may pursue a claim for unjust enrichment alongside a claim for tort, contract, or statute so long as the claim is based upon a theory that Defendant engaged in unlawful or improper conduct rather than an implied or quasi contract theory. *Muir v. Nature's Bounty, Inc.*, No. 15 c 9835, 2017 WL 4310650, at *6 (N.D. Ill. Sept. 28, 2017) (explaining that unjust enrichment claims based upon improper conduct such as fraud may exist alongside contract claims, but the existence of an express contract between the parties will crowd out the possibility an implied contract); *see also Util. Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 689 (7th Cir. 2004) (if a contract governs the parties, they may not bring an unjust enrichment claim to prohibit "a party whose expectations were not realized under the contract from nevertheless recovering outside the contact"). Here, Plaintiff does not allege

9

that Defendant was unjustly enriched because it engaged in improper or deceitful conduct. Instead, his allegations are entirely based upon Defendant's alleged failure to perform under the Settlement Agreement. [35] ¶¶ 59–66. His claim, thus, does not fall outside the contract, and it must be dismissed. *Id.* For these reasons, this Court, thus, grants with prejudice Defendant's motion to dismiss Plaintiff's unjust enrichment claim.

IV. <u>Equitable Estoppel</u>

Plaintiff also asserts a claim for equitable estoppel. [35] ¶¶ 53–58. He argues that under the Settlement Agreement, Defendant had 21 days to verify that the Works were "technically satisfactory for commercial distribution" and if it discovered a problem, it was obligated to notify Plaintiff and return the Works. *Id.* ¶ 55. Plaintiff also alleges that depositions taken in the lawsuit between Plaintiff and Kanye West alerted it that "Plaintiff was not responsible for selecting" the samples contained in the Works. *Id.* ¶ 56. Because Defendant failed to do its diligence during its verification and was on notice about possible samples, Plaintiff argues it should be equitably estopped from asserting that it did not breach the contract due to Plaintiff's failure to clear the samples. *Id.* ¶ 58.

Equitable estoppel, though, is "only recognized as a defense not as a cause of action." *SFRL Inc. v. Galena State Bank & Tr. Co.*, No. 11 c 50277, 2013 WL 497600, at *7 (N.D. Ill. Feb. 7, 2013) (citing *Newton Tractor Sales, Inc. v. Tractor Corp.*, 906 N.E.2d 520, 526 (Ill. 2009)). For this reason, to the extent Plaintiff asserts equitable

10

estoppel as a cause of action rather than a defense, this Court grants with prejudice Defendant's motion to dismiss.

V. <u>Punitive Damages and Attorneys' Fees</u>

Defendant additionally seeks to dismiss Plaintiff's requests for punitive damages and attorneys' fees. [43] at 14–15; [35] at 15. Under Illinois law, a party may not recover punitive damages for a breach of contract claim unless the conduct that caused the breach is also an independently actionable action tort for which punitive damages are recoverable. *Morrow v. L.A. Goldschmidt Assocs., Inc.*, 492 N.E.2d 181, 184 (Ill. 1986); *BP Amoco Chem. v. Flint Hills Res., LLC*, 489 F. Supp. 2d 853, 857 (N.D. Ill. 2007). But, as explained previously, the facts Plaintiff alleges amount to a standard breach of contract case, not a tort case. Furthermore, under the economic loss doctrine, Plaintiff cannot maintain a tort claim based upon breach of contract facts when his losses, as here, as economic. *BP Amoco Chem.*, 489 F. Supp. 2d at 857. Accordingly, this Court grants Defendant's motion to dismiss Plaintiff's request for punitive damages with prejudice.

Relatedly, Plaintiff's request for attorneys' fees, [35] ¶ 66, is also improper based upon his pleadings. In Illinois, the "general rule is that the unsuccessful party in a lawsuit is not responsible for the other party's attorney fees." *Powers v. Rockford Stop-N-Go, Inc.*, 761 N.E.2d 237, 240 (Ill. 2001). For this reason, attorneys' fees are only appropriate when they are contemplated by a statute or "some agreement or stipulation specifically authorizing them." *Chi. Title & Tr. Co. v. Walsh*, 340 N.E.2d 106, 115 (Ill. 1975). Here, Plaintiff does not identify a statute or agreement

11

authorizing attorneys' fees. Instead, Plaintiff argues that attorneys' fees would be proper as part of any punitive damages calculation. [50] at 15. While courts may properly consider attorneys' fees when "fixing an award for exemplary damages," *Chi. Title & Tr.*, 340 N.E.2d at 115, this Court already dismissed Plaintiff's punitive damages request. As such, Plaintiff has no basis to seek attorneys' fees. This Court, thus, dismisses with prejudice Plaintiff's claim for attorneys' fees.

VI. Further Amendments

Finally, this Court denies Plaintiff's request for leave to amend his complaint for a second time. [50] at 14. On September 9, 2019, this Court advised Plaintiff that he could either elect to amend his already amended complaint or he could stand on it and proceed with motion to dismiss briefing. [47]. Plaintiff elected to proceed with briefing. As a result of this choice and based upon the entire record, it is not unjust to deny further attempts to amend, especially where, as here, further amendments would be futile.

## CONCLUSION

For the reasons stated herein, this Court grants in part and denies in part Defendant's motion to dismiss, [42], Plaintiff's first amended complaint. This Court grants Defendant's motion to dismiss with prejudice Counts II and IV. This Court also grants Defendant's motion to dismiss Count III to the extent Plaintiff asserts Count III as its own cause of action. This Court denies Defendant's motion to dismiss Count I.

This Court converts the 2/11/2020 motion hearing to a case management conference, now set for Tuesday, February 11, 2020 at 9:45 a.m. in Courtroom 1203, at which point the parties shall be prepared to set all case management dates.

Dated: February 10, 2020

Entered:

John Robert Blakey

United States District Judge